___ FILED   ___ ENTERED
___ LOGGED  ___ RECEIVED

3:32 pm, Sep 22 2021

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY BEARDEN,<br>   Defendant. | Case No. 1:21-mj-2669 TMD |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINTS AND ARREST WARRANTS**

I, William Chen, being duly sworn, hereby declare as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant is a Special Agent with Homeland Security Investigations ("HSI") in its Frederick, MD office. As such, I am "an investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. Your Affiant completed the Federal Criminal Investigator Training Program and the Immigration and Customs Enforcement ("ICE") Special Agent Training at the Federal Law Enforcement Training Center located in Glynco, Georgia. Your Affiant received 23 weeks of intensive training in narcotics trafficking, money laundering and other investigations. Your Affiant also received additional training in methods to trace illegal proceeds and prove financial crimes, asset forfeiture, and financial investigations, including but not limited to financial fraud.

3. Your Affiant received a Bachelor of Arts degree in both Political Science and Sociology from the University of Maryland, Baltimore County (UMBC) in 2008. I have been employed by HSI since October 2010 and have approximately eleven (11) years total federal law

enforcement experience with Immigration and Customs Enforcement, Homeland Security Investigations. Within that time, I have participated and conducted complex criminal investigations. These investigations resulted in numerous arrests and seizures of illegal contraband and related assets.

4. As a special agent, your Affiant is personally familiar with and have used all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, subpoenas, and undercover operations. Through such investigations and training, I have become familiar with the patterns of activity of smugglers, persons associated with money laundering, fraud, and schemes involving import, exports, and other means utilized to defraud the government of the United States. I have also become familiar with the methods, language and terms that are used to disguise the source and nature of illegal activity and profits.

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter or investigation. I have not, however, excluded any information known to me that would defeat a determination of probable cause. Moreover, where, in this report your Affiant described or referred to a statement made by an individual, that statement is described in substance and in part—it is not intended to be a verbatim recitation of the entire statement made by that individual.

6. I make this affidavit in support of a criminal complaint and arrest warrant for each of the individuals listed below. Based on the following facts, there is probable cause to believe that, in the District of Maryland and elsewhere, **JEFFREY BEARDEN** committed False

1:21-mj-2669 TMD

Statement in violation of 18 U.S.C. § 1014 and Bank Fraud in violation of 18 U.S.C. § 1344.

## CARES ACT BACKGROUND

7.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was enacted to provide emergency financial assistance to the millions of Americans suffering from the economic consequences of COVID-19. The Paycheck Protection Program (PPP), established by the CARES Act, is implemented by the Small Business Administration (SBA) with support from the Department of the Treasury. This program provides small businesses with funds to pay up to eight weeks of payroll costs including benefits. Funds can also be used to pay interest on mortgages, rent, and utilities. The SBA's Economic Injury Disaster Loan (EIDL) is also available to provide support to small businesses experiencing a temporary loss of revenue because of the COVID-19 pandemic. EIDL proceeds can be used to cover a wide array of working capital and normal operating expenses, such as continuation to health care benefits, rent, utilities, and fixed debt payments. It allows for an advance of up to $10,000 United States Dollars (USD) that does not have to be repaid. Individual small businesses can receive both EIDL and PPP loans, subject to regulations promulgated by the SBA.

8.     The provisions of The CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the U.S. Small Business Administration to offer EIDL funding to business owners negatively affected by the COVID-19 pandemic.  Using the SBA online portal, EIDL applicants submit personal and business information in support of each EIDL application, and they do not have to submit supporting documentation of any sort.

9.     The application includes a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.  The application process involves filling out assorted data fields relating to the size of the

affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to COVID-19 impact on the national economy. This information, submitted by the applicant, is then used by SBA systems to calculate the principal amount of money the small business is eligible to receive in the form of an EIDL. However, in conjunction with the submission of an EIDL application, by simply clicking on and checking a box within the on-line application, an applicant may request and then receive up to $10,000.00 in an EIDL Cash Advance Grant based on the number of employees claimed. The EIDL Cash Advance Grant need not be repaid to the SBA if the loan application is ultimately denied by the SBA, or if the applicant declines the EIDL that may be offered by the SBA at a later date.

10. Pursuant to the provisions governing the EIDL program, loan proceeds must be used by that business on certain permissible expenses. The EIDL (working capital) loans may be used by the afflicted business, which must have existed on and prior to February 1, 2020, to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred

## FIRST FALSE PPP LOAN APPLICATION

11. In 2020, **JEFFREY BEARDEN**, a resident of Hagerstown Maryland, was the Chief Executive Officer (CEO) of B&D Consulting Inc., a Maryland corporation that provided information technology services, including cybersecurity services.

12. In May 2020, **BEARDEN** applied for a $734,609.00 loan through the Paycheck Protection Program (PPP). On the application, **BEARDEN** electronically placed his initials next to each of the following certifications:

    a. "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

    b. "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, or utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

    c. "The information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.  I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of note more than $1,000,000."

13.    **BEARDEN** electronically signed this PPP application on May 1, 2020, attesting that the information provided was true and accurate and that he understood the criminal penalties associated with providing false statements to the SBA.

14.    In truth and fact, B&D Consulting did not have any employees at the time the application was filed. B&D Consulting had not reported paying any earnings and wages for any employee to the Maryland Department of Labor and Licensing (DLLR) for all of 2020. The last time B&D Consulting reported paying wages for employees was the second quarter of 2019, when B&D Consulting had reported forty-five employees. Additionally, as part of the loan application,

**BEARDEN** submitted an IRS Form 941 for the 4th quarter of 2019, which showed that B&D Consulting reported 0 employees to the IRS for that quarter.

15.     The PPP loan was administered by a Utah-based Bank ("Bank-1"), an approved SBA lender and a federally insured institution. Once the loan was approved, $734,609.00 was deposited into B&D Consulting's Business Account ending in 8208 on May 12, 2020.

### BEARDEN'S DIVERSION OF PPP FUNDS TO PURCHASE STOCKS

16.     That same day, the $734,609.00 was then transferred from the account ending in 8208 to a separate B&D Consulting account ending in 8224. At the start of May 2020, this account had a beginning balance of $0. Of the $734,609.00, approximately $45,946.64 was transferred to three other individuals, and approximately $23,901.42 was transferred to another account controlled by **BEARDEN**. After these debits, this account ended the month of May 2020 with a balance of $664,670.94.

17.     The next month, $600,000.00 was transferred to a brokerage account controlled by **BEARDEN**. This money was then used to purchase stocks in a variety of publicly-traded companies, including one that produced a vaccine for COVID-19. Purchase of stocks is not an approved use of PPP loan funds by the Small Business Administration.

### SECOND FALSE PPP LOAN APPLICATION

18.     In February 2021, **BEARDEN** applied for a second PPP loan for $734.608.97 from Bank-1.  As part of the loan application, **BEARDEN** submitted a fraudulent bank statement for the B&D Consulting account ending in 8208 for the month of March 2020.  The bank statement **BEARDEN** submitted purported to show that B&D Consulting was paying salaries to at least nineteen (19) individuals, and that there had been $335,000 in total deposits and $332,017.10 in total withdrawals.

19. The actual records from that account, obtained by investigators, show that there were no deposits or withdrawals in March 2020 for the account ending in 8208, and the total account balance at the end of March 31, 20210 was -$278.84

20. Bank-1 initially funded the second loan at the full amount of $734,609.00. However, upon discovering the fraudulent March 2020 statement, the loan was cancelled, and no funds were disbursed.

## CONCLUSION

21. Based on the information set forth in this affidavit, I respectfully submit there is probable cause that **JEFFREY BEARDEN** committed the offenses of False Statement in violation of 18 U.S.C. § 1014 and Bank Fraud in violation of 18 U.S.C. § 1344.

WILLIAM CHEN  
Digitally signed by WILLIAM CHEN  
Date: 2021.09.21 16:55:06 -04'00'

Special Agent William Chen  
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this _22_ day of _Sept._, 2021.

Hon. Thomas M. DiGirolamo  
United State Magistrate Judge

7